vs. Secretary of Veterans Affairs of 2015-7082. Ms. Drake. Yes, thank you, your honor. May it please the court, this case today presents a narrow question for you involving extraordinary circumstances within the equitable tolling doctrine that this court has written about before, most recently in the Chico case and the equitable tolling that I want to talk about, but first I want to tell you about who we are applying these elements to. The appellant is Emilio Palomar. He lives in the Philippines. He's 92 years old. He served in World War II as a guerrilla. He seeks a reparation payment under the Filipino Veterans Equity Compensation Fund Act, which was enacted by Congress in 2009. He has bad eyesight. His hearing is bad. He relies on third parties to tell him about communications from the VA. When it comes to extraordinary circumstances, his mail comes a lot later than everybody else's mail because he lives in the Philippines. As we know from Chico, which is a very recent case involving a homeless Veteran, where the court found and the VA conceded, homelessness is an extraordinary circumstance. When we talk about equitable tolling, there are three elements. Is there an extraordinary circumstance? Was the Veteran diligent and did that extraordinary circumstance cause the delay? Here, Mr. Palomar was out of time by 13 days. We know from looking at the pattern of mailing in between the Philippines and the United States, in Mr. Palomar's case, in looking at the date stamp that the Court of Appeals receives a filing or when the board receives a filing, they keep track of that. They have date stamps. They know when they get things. We know that there is a two to three week delay between the mail from the United States to the Philippines and back and forth. The CABC, whose decision we ask you to reverse, they recognize that there is a delay in international mailing. Dr. Paul Palomar Two to three weeks is just a small part of 120 days. Dr. Jane Farrow Well, I respectfully disagree when you're 92 years old and you rely on somebody to read very dense VA information to you and your eyesight isn't very good and your hearing is not very good. Two to three weeks is not very much time. Dr. Paul Palomar Did Mr. Palomar meet the deadline in other filings? Dr. Jane Farrow Your Honor, he did. That is where the lower court erred. As this court instructed in Chico, when you talk about diligence, and it's clearly a factor, when you look at diligence, you look at diligence during the time period of the extraordinary circumstance. We're talking about that two to three week time period where the mail is delayed. You don't talk about diligence for the remaining three months. That's exactly what this court held in Chico when it adopted the stop clock methodology in equitable tolling cases. That's exactly where this court, the CABC, erred in this case because just like in Chico, they didn't look at the right time period to measure the diligence. Dr. Paul Palomar We have a threshold jurisdictional question in all of these veterans' cases. We look to what the appellant's legal test is. What is the legal standard you are asking us to apply? The question of all, how would you phrase your position with respect to a legal question that we have to address? What is the standard you want us to apply? I would like the court to adopt a standard that equitable tolling does not reach the question of what a veteran could have done. It's what the veteran did do given his circumstances. That's a legal question. There's also a legal question as to whether given the Filipino Veteran Equity Compensation Fund Act itself, where veterans are literally dying, there were very few Filipino veterans alive when the act was passed. That would have implications when we are talking about equitable tolling. Dr. Paul Palomar I thought your contention was that mail delay ought to result in equitable tolling if it's outside the United States. Dr. Jane Farrow Right, correct. That's a third legal question, Your Honor, where the statute itself, when it comes to mailing, only talks about domestic mailing. Can equitable tolling still provide relief? Should it? We submit international mailing, which was never addressed in the mailing statute. Dr. Paul Palomar What would be the way you would advocate that we treat the international mail? Add X number of days or count only from the date of receipt? Dr. Jane Farrow Just as this Court has said in MAPU and other cases, you've got to look at it on a case-by-case basis. Dr. Paul Palomar I'm looking for a legal standard that will give us jurisdiction to address this equitable tolling question. What is the legal test you want us to apply? Here's where the CAVC went wrong, because they didn't apply the following legal standard. You want us to say, they should have said the days start upon receipt, or they should have added the average number of days that it takes to get to the Philippines, which is the test you want us to apply? Dr. Jane Farrow I believe that the Court should start the after the extraordinary circumstance has expired. Dr. Paul Palomar Wouldn't that be legislating? Dr. Jane Farrow I don't believe so, because equitable tolling is always designed to get around a statutory limitation. That's the nature of the doctrine. Dr. Paul Palomar But you're asking us to determine a couple of weeks and to set that as being part of the rule? Dr. Jane Farrow It's equitable tolling. It's equity. You don't have to have the sharp pencil. Unfortunately, veterans don't have date stamps like courts do to stamp when they get a communication from the VA. The best we can do is look at the pattern of mailing. In this case, the pattern of mailing shows that there is a delay between the mail from the United States to the Philippines, which the CAVC did recognize. It just found that it wasn't extraordinary. But it is extraordinary because it's out of Mr. Palomar's control. Dr. Paul Palomar You know, of course, that we have no jurisdiction over fact questions. Dr. Jane Farrow Your Honor, I understand that. As this Court found in Bailey v. Principe, where there are undisputed facts and legal standards that need to be applied, you do have jurisdiction. Here, there are legal standards that need to be addressed. Specifically, does equitable tolling apply in this situation? The Court below error because it found that Mr. Palomar could have filed. That is not the legal standard and should not be the legal standard. Dr. Paul Palomar That's a fact. That's a fact. Dr. Jane Farrow Well, but the Court used the standard that because he could. Dr. Paul Palomar That's a finding effect. Dr. Jane Farrow Because he could, that is why they found he was not entitled to any relief. Dr. Paul Palomar If that's a finding effect, it's something we can't review. Isn't that correct? Dr. Jane Farrow This Court does not get into factual questions. But this Court has gotten into a lot of equitable tolling situations. When it comes to equitable tax and the issue is the appropriate legal standard, we decide equitable tolling as a matter of law. In Chico, when there was a homeless veteran, this Court reviewed it and said that there was jurisdiction and got into the issues of whether or not the veteran was diligent and what the standard for diligence should be. Similarly here, we need to look at, and the Court does not describe what diligence is I respectfully submit, there is plenty of diligence here. There is nothing you can do in that two to three week time period to make the mail come any faster to him. The diligence, we believe that extraordinary circumstances apply when there is international mailing because the statute only relates to domestic mail. He was diligent because as he writes in the letter to the Court, Joint Appendix 39, I didn't know I had to file in 120 days. I always try very hard to answer each of the letters pertaining to my claim as soon as possible. So he expresses, and it's in the record, that he was in fact diligent. Justice Breyer The notice that was sent to him, I have to say, was pretty clear about the 120 days. I would think that maybe he didn't understand it or maybe he was incapable of reading it, but to say that he was diligent because there was no way he could reasonably be expected to understand that he had 120 days, I don't know how the VA could have been any clearer about the 120 day period. We don't challenge the content of the notice on appeal here, Your Honor. If you're sitting in the Philippines and you're older and somebody's reading it to you, I can understand his statement when he says, I have no idea that I have to file it within 120 days. He is hearing that orally. I accept his statement, but that is not the basis of our appeal here, Your Honor. Our appeal is there is an extraordinary circumstance. It's international mailing. There's no question it's two to three weeks later. He was diligent. When you look at that two-week time period and you look at what he told the court, I tried very hard. I'm not always able to respond because of my age. I'm already 91. My eyes and my sense of hearing have deteriorated. I'm reading from JA 39. I have to ask somebody to assist me to write my letter and file my appeal. He's as diligent as he can be, but he can't make the mail come to him any faster. Wouldn't you be making exactly the same argument if he had not gotten around to sending this letter for another month, the request for reconsideration? It would, I believe, be a tougher argument because we wouldn't have the extraordinary circumstance of the delayed mailing. That is the extraordinary circumstance. It's completely out of his control. If he was 200 days late as opposed to 133 days late, that's a tough argument for us, Your Honor. I agree. Respectfully, and I'm happy to answer any questions or sit down early, we believe this court set the analysis out perfectly straight and checko. Is there an extraordinary circumstance? Was the veteran diligent during that time period of the extraordinary circumstance? Is there causation? Respectfully, we believe that each of those elements has been met here and accordingly, the Court of Appeals for Veterans Claims decisions must be reversed. We will hold the rest of your time for rebuttal. Thank you, sir. Ms. Hogan. Good afternoon, Your Honor. Sam Fleece, the court. The decision of the Veterans Court is legally correct and it should be affirmed. Let me ask you about their alternative theory here about his physical condition. As I understand it, our prior cases have involved situations where people were incompetent to manage their own affairs and that is not the situation here. Why shouldn't there also be equitable tolling where somebody is impaired in terms of vision and hearing so that that person has a hard time meeting the deadlines? I don't think we would argue that equitable tolling might be available in such a circumstance, but the facts that the Veterans Court reviewed, notably the Veterans Court on pages 52 and 53, it took those facts into consideration to explain that just sort of general statements that one is old and has eyesight problems and needs a third party without some facts, specific facts to draw that story to the court, is not something that the court is required to accept. The court explained Mr. Pallmer didn't say who this third party is, how often do they visit, when did the person read the letter to them. Notably, Mr. Pallmer never says when he did receive the letter and that is a fact that the court found important. So, I don't think we would suggest that physical infirmity in the right circumstances might be an extraordinary circumstance that could stand in the way of someone's timely filing, but in this particular circumstance on the facts that Mr. Pallmer gave the Veterans Court. He didn't provide enough detail. I think that is the conclusion that you could draw. You need to go beyond simply saying you're old or infirm, that that has to be tied to an inability to take care of one's legal affairs in a timely manner. I think that is a fact. This is clearly a factual issue that the Veterans Court addressed that would be beyond. Well, it wouldn't be a factual issue if we were to read their opinion as rejecting it on the theory that only mental incompetence could qualify for equitable tolerance as opposed to physical infirmity. Because they say in the beginning under item two, they say equitable tolerance may be warranted if a claimant's mental or physical illness renders him incapable of handling his own affairs. And if we were to read that as the standard, that might be the wrong standard. Right. And if the court goes- And you seem to think that it's the wrong standard because as I understand it, you concede that physical infirmities could lead to equitable tolerance. I think under the right factual facts that certainly might warrant equitable tolerance. But what the Veterans Court does correctly state at the end of the paragraph is that are not sufficient. And I think that that's the conclusion that the Veterans Court drew in this case was that this is just an allegation without specifics. With respect to the main argument that Mr. Pallimer makes on appeal, and I think the only one that we would consider to be within the court's jurisdiction, the normal usual time for mail to arrive to one's geographical location is not an extraordinary circumstance. And to adopt a legal standard that Mr. Pallimer puts before the court would lead to the anomaly that a claimant living in Hawaii would have a time period for filing a notice of appeal start from the date of mailing the board decision, whereas someone living in Toronto would get the benefit of the date of receipt, which again, we're still going to have to rely on the veteran or the claimant to come forward and say what that date was. But I don't think that that's a standard that the court should be adopting, I think particularly in light of the fact that when Congress revised 7266 in 1994, it did know that it takes longer for mail to arrive in certain geographical locations and decided not to change the time period for when the appeal period starts to run. It did add the postmark rule, which does provide a benefit for claimants who use the U.S. postal system to have the date of postmark be count as the date that the notice of appeal is filed. If you don't use the postal system, then you're back to the beginning, which is that the notice of appeal, or in this case, the request for reconsideration must arrive within 120 days from the date of mailing of the board decision. This is a little bit unusual, I guess it happens from time to time, but rather than there being a delay in filing the notice of appeal, the notice of appeal was timely filed if you take it from the dismissal or the denial of reconsideration, that the delay is earlier in the process of the period between receipt of the actual ruling of the board and the filing of the request for reconsideration. Is it clear to you, I don't think that that's governed by statute. It seems to me the statute only covers the period for filing a notice of appeal. Is it clear to you that the same principle that applies to the period for filing a notice of appeal applies to the period for filing a motion for reconsideration, if you intend ultimately to file a notice of appeal? I mean, I take it that you can file a request for reconsideration at any time. Correct. But if you don't meet the 120 days, the consequence is, I take it, that you then can't seek an appeal. Right, unless, as the Veterans Court found here, there was some equitable tolling to be applied. Right. Right, so at least going back to 1991, the Veterans Court has said that if you do file a request for reconsideration within that 120 day time period, that will abate the time period for filing. And if you don't, you're out of court. Right, so you must do something within those 120 days, whether that's filing a notice of appeal with the Veterans Court or filing a request. It is a little strange, the structure is a little strange, right, because they say you can file a request for reconsideration at any time, but the catch is, if it's not in 120 days, you'll never be able to take an appeal. Am I right about that being the structure? That is the structure, and right, I guess the idea being, if you did come back a year later with some compelling reason to reconsider that. But if you file a request for reconsideration within 120 days, then how long do you have after the denial of that to file at the court? You have another 120 days. Because that's another decision. That's in two cases. A time in the motion for reconsideration tolls the period of the board's decision, in effect. Correct. Yeah, okay. Just one other point I think I want to make, which is that Mr. Palmer also contends that because he is a claimant under this particular Filipino Veterans Equity Compensation Fund, that that somehow should be taken into consideration as an equitable element, and this court has not drawn any distinctions based on classes of claimants or the types of veterans benefits that a claimant is seeking, and to the extent that Congress intended to treat these claimants differently or more generously, it certainly had the opportunity to do so in 2009, and to the contrary, Section 1002J2 of the legislation provided that the secretary is to apply Title 38 in the usual way that it processes claims. So except to the extent that it would be contrary to what the act provided. I suppose if there were a case in which the entire 120 days, or let's say all but three days of the 120 days that expired before the notice of the board's decision had arrived in wherever someone is, Kathmandu or something, would you say in that situation that the board equitable tolling would almost certainly apply? I think it's a closer case, Your Honor. I think it's certainly, if you lived in Kathmandu, for example, you're in a war zone where there's not reliable mail. And the Postal Service, God forbid, just lost the letter, and finally they found it on the 125th day. I mean, you're not going to say that the person in that situation is barred from appealing, right? No, I think they would have to come forward with facts explaining the circumstances of when they received the notice and how that that was extraordinary considering what should normally have applied, what should normally have happened. That would be true domestically, too. You lived in Detroit, and you didn't get it until the day before. You'd have an argument for equitable tolling, right? I think you could make an argument. Well, you could make an argument. My question really is, is the government inclined to commit itself to the position that that argument would be a very strong one? I think that would get closer to an extraordinary circumstance than this is just a normal time it takes for mail to be delivered, and two weeks is not in and of itself an extraordinary time period considering what it might take for it to get to Arizona or California or Hawaii, which the Congress did specifically have in mind and chose not to change the time period from which, or rather to include the time that it takes for mail to be received within that 120 days. If the court has no further questions, we would respectfully request that the court either dismiss or affirm the decision of the Veterans Court. Thank you, Ms. Hogan. Ms. Drake has... Thank you, Your Honor. Just a few points I'd like to make in response. With respect to the statute being amended to allow for the postmark to apply on the way back and that therefore we shouldn't worry about how long it takes mail to get to them, if you look at the congressional history, which is cited in the appellee's brief, it's very apparent that Congress was only talking about domestic mail and the U.S. Postal Service. Congress had no clue about the Filipino Postal Corporation, which is how the mail got from Mr. Palomar to the board and how it got from the board to Mr. Palomar. It was completely outside the scope of what Congress did when it amended the statute. Also, with respect to counsel's view that the Filipino Veteran Equity Compensation Fund looks to Title 38 and directs us to Title 38, the act itself also says, look at all of the other provisions of law and other provisions of law, that wonderful broad phrase, including equitable tolling. Equitable tolling is a provision of law. Title 38 is a huge section. It includes everything from how to file a claim to how to file a notice of appeal. There's a lot of stuff in there. I don't think Congress really focused in on the mailing issue when they passed this Reparations Act in 2009, which is buried in the middle of the stimulus package. In 2009, Senator Inouye actually finally, after decades, the Filipino Lobbying Organization was successful enough to get some reparations. It's in the middle of this huge legislation. I just don't believe that when Congress said, let's make sure we look at Title 38 too, they meant to say international mailing is now suddenly included in 7266. Finally, Your Honor, the new legal standard, I think, that should be considered in addition to the others that are in our brief, is why shouldn't equitable tolling be applied when you have someone who's over 90, hard of hearing, affirms that they can't see, relies on a third person. Isn't that incapable of handling affairs? Perhaps we need to broaden the legal standard that applies in those situations when it comes to equitable tolling. Finally, the government asserts that Mr. Palomar did not state exactly when he received the letter from the BVA. Again, veterans don't have the file stamps that courts and the board have. To hold a veteran to that standard, I think, is unrealistic, and not in keeping with the pro-veteran system that we supposedly have. Unless the court has anything further, I'd like to conclude by saying there is no better case for equitable tolling. We have a 92-year-old Filipino soldier, served in World War II as a guerrilla. His eyesight's failing. He can't hear. He needs somebody to explain things to him. He was out of time for 13 days, when the very record reflects that mail takes at least two to three weeks to get to him. For those reasons, Your Honors, we ask that you reverse the decision of the Court of Appeals of Veterans Claims. Thank you, Ms. Drake. The case was well argued on both sides. We appreciate it. We'll take it on revisement.